**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

Michael Soltishick,

                                        Plaintiff,                    No. 3:18-cv-00712

          v.                                                          (Judge Brann)

Nancy A. Berryhill,                                                   December 21, 2018
Acting Commissioner of
Social Security

                              Defendant.

**MEMORANDUM OPINION**

**DECEMBER 31, 2018**

I.      **Procedural Background.**

        The Court considers here Plaintiff Michael Soltishick's appeal from an

adverse decision of the Social Security Administration ("SSA" or "Agency") on

his applications for Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI"). Plaintiff's applications were denied at the administrative

level and he then requested a hearing before an administrative law judge ("ALJ").

He received his hearing on October 4, 2016 in Wilkes-Barre, Pennsylvania before

ALJ Jarrod Tranguch. On April 3, 2017, the ALJ issued a Notice of Decision that

denied Plaintiff's claims. Plaintiff appealed this decision to the Appeals Council.

The Appeals Council denied his request for review by Notice of Action dated

February 05, 2018. Plaintiff then appealed to this Court, which exercises jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. Testimony before the ALJ.

ALJ Tranguch conducted a hearing in this matter on October 4, 2016. Plaintiff was physically present along with his attorney, Donald Ligorio, and Gerald Keating, a vocational expert ("VE"). Preliminary discussion included Attorney Ligorio's acknowledgment that there had been a prior unfavorable decision regarding Plaintiff's claims by a different ALJ and that Plaintiff had elected to amend his alleged onset date to June 25, 2014 (his 50th birthday). The ALJ stated that the prior decision had included a finding of fact that Plaintiff was limited to sedentary work, but that he was "not bound by that prior decision." Attorney Ligorio responded that Plaintiff's claim was based upon degenerative disc disease, lumbar radiculitis or radiculopathy, and carpal tunnel syndrome. (R. 31-35).

Plaintiff testified that he was born June 25, 1965. He was fifty-one years of age on the date of his hearing. He stated that he stands five-feet ten inches tall and weighs two hundred and thirty-six pounds. His weight had been stable in the two years preceding the hearing. He has never been married and has no children. He lives with his mother and grandmother in a home owned by his grandmother. Neither his mother nor his grandmother require his assistance with their daily activities. (R. 40-41).

Plaintiff has a driver's license and is able to drive. He completed his high school education and received a diploma. He did not pursue higher education or vocational training and has no military experience. His last relevant work was from 1999 through 2010 as a laborer for a plastering company. Plaintiff testified that he had not worked since 2010 in any capacity. He stated further that the primary reason he had not worked since 2010 was low back pain. (R. 41-43).

In the preceding two years he had been experiencing pain across his lower back extending down both legs, but more frequently present in his right leg. He also had been experiencing a burning sensation in the bottoms of both feet. His hand symptoms include numbness and cramps. His hands go numb frequently, particularly his right hand. After he falls asleep at night both hands go numb and this awakens him. He has been diagnosed with carpal tunnel syndrome and his treatment has been confined to wearing braces. He has found that the braces are not very helpful. His hands are also numb throughout the day. The numbness is exacerbated by any repetitive hand movements. Similarly, his back symptoms are made worse with bending, lifting, or standing on uneven ground. (R. 43-44).

Plaintiff estimated that he could lift objects weighing twenty to twenty-five pounds but that he could not sustain such effort "over any length of time." He has difficulty walking even on flat surfaces and estimates that he can walk for perhaps ten minutes before he would need to stop. Walking to that extent would aggravate his low back pain. Standing in one spot would present the same problem and

similar effects. He stated that he would be able to sit in one place for thirty to forty five minutes before he would need to stand and move around. He wears a back brace as prescribed by his physician. He wears the brace when he cuts the grass on his riding mower or when he goes to an appointment which will require him to sit for a long period of time. The brace does not help his pain but it does aid his posture. He takes Dilaudid, Norco, and Cyclobenzaprine, a muscle relaxer, for his back pain. The medication does help but only for a short time. He has also gone to physical therapy and seen a chiropractor for his back pain but had not participated in physical therapy or seen a chiropractor for one and a half years prior to his hearing.  He had been scheduled for a spinal injection in 2013 but his insurer would not issue pre-approval. Accordingly, he canceled the injection. (R. 46-47).

The medications Plaintiff takes make him groggy and fatigued. At times they also produce dizziness. He acknowledged that he is able to bathe, dress, and feed himself. He does try to assist with housework such as sweeping the floor, taking out the garbage, and occasionally washing some dishes. However, he cannot do such chores for long before he must sit or lay down for a rest. When Plaintiff cuts the grass on his riding lawnmower, he must do so over two days and the work is broken up into numerous forty-five minute to one hour sessions separated by intervening rest breaks. This job, which formerly he was able to accomplish in approximately four continuous hours within one day, now takes him six to eight hours over a two day period. His only hobbies are reading and watching television.

Before he hurt his back he fished and rode a mountain bike. He stated that he hasn't fished in four years and hasn't ridden his mountain bike in six years. He does not belong to any community organization or social club. (R. 47-49).

On examination by his attorney, Plaintiff stated that in the past two years his back problems have gotten worse. He has found it necessary to take his medications more often to try to control his pain. He now takes these medication at the maximum frequency prescribed. Even so, he states: "I'm still hurting after I take everything that's prescribed." If he stands for more than ten to fifteen minutes his back pain intensifies and forces him to lay down. Any sort of twisting movement produces the same effects. His hand numbness and cramping is aggravated by any repetitive movement such as using a screwdriver. Once his hands cramp he must stop what he is doing for as long as forty-five minutes to one hour before he can resume a task. (R. 49-51).

The ALJ questioned whether Plaintiff knew the reason why his doctor had not referred him to a neurosurgeon or orthopedic surgeon. Plaintiff stated that he had been told that the progression would be physical therapy, then spinal injections, and finally surgery, if necessary. He stated that, because he could not even get approval for spinal injections from his insurer, surgery was never considered. He could not explain why his insurer had not approved spinal injections. (R. 51-52).

VE Gerald Keating also testified. He described Plaintiff as "a person approaching advanced age". He described Plaintiff's past relevant work as "very heavy, unskilled". The ALJ asked the VE to consider a hypothetical question in which he should assume a person the same age with the same education and work experience as the Plaintiff. The VE was also asked to assume that the hypothetical individual was limited to work at the light exertional level and that he could occasionally use his arms and legs for pushing or pulling levers, controls, or pedals; could occasionally balance, kneel, stoop, crouch, and use ramps and climb stairs; should avoid crawling or climbing on ladders, ropes, or scaffolds; and should avoid exposure to wet or slippery conditions, vibrations, and workplace hazards such as moving machinery. Based upon these assumptions, the VE stated that the hypothetical individual could not perform Plaintiff's past relevant work as a laborer for a plastering company.

The VE did state that a person with the limitations of the hypothetical individual could perform several jobs that exist in significant numbers in the national economy including "assembler, small products", "stock checker, apparel", and "general cashier". At this point, the ALJ observed that if Plaintiff were to be regarded as capable of only sedentary work (as had been found by the ALJ that denied Plaintiff's previous claim) he would qualify for "a favorable GRID outcome

at age fifty, which is the amended onset date." [1] The ALJ also explained that he wanted to see additional diagnostic studies including EMG studies and a CAT scan which had been referenced in the record. (R. 52-55).

## III. Relevant Medical Evidence.

### 1. Dallas Family Practice.

Plaintiff's primary care physicians from June 2014 through at least October 2016 were Doctors Richard Oley, Irvin Jacobs and Jane Durkin. These physicians operated under the aegis of Dallas Family Practice. Each of them saw Plaintiff multiple times in the relevant time period. Plaintiff was also attended by Patricia Buzinkai, a physician's assistant working under direction of the aforementioned physicians. (Doc. B10 F, R. at 270-335).

On June 8, 2014, Dr. Jacobs' progress note revealed that Plaintiff was experiencing a radiation of lower back pain into the backs of his legs bilaterally as well as neck pain without radiation. The level of pain was such that Plaintiff indicated that he had found it necessary to use an existing prescription for Hydrocodone more frequently than had previously been the case. Dr. Jacobs assessed thoracic and lumbosacral neuritis and low back pain. Dr. Jacob's examination disclosed a positive left straight leg raise and tenderness of the spine bilaterally at L3 to L5. (Doc. B10 F at 270-335).

---

[1] See 20 C.F.R. Part 404, Subpart P, Appendix 2.

On September 19, 2014, Dr. Oley noted that Plaintiff presented with back pain and documented his medical history of thoracic and lumbosacral neuritis with low back pain. Dr. Oley prescribed Hydromorphone and Hydrocodone for Plaintiff's back pain and Cyclobenzaprine, a muscle relaxant, for cervicalgia.[2]

Both Dr. Oley and Dr. Jacobs continued to document Plaintiff's medical problems in various progress notes dated through October 2016. Additionally, Dr. Jane Durkin saw Plaintiff on May 23, 2016 and indicated that he had presented with chronic back pain, had been prescribed Zohydro because Vicodin was no longer controlling his pain, and was experiencing hand pain bilaterally accompanied by tingling and numbness. Her examination indicated that Plaintiff's low back pain was accompanied by positive straight leg raises bilaterally. (R. 327-329).

On October 19, 2015, Dr. Jacobs completed a Medical Source Statement regarding Plaintiff. Dr. Jacobs opined that Plaintiff: could occasionally lift up to twenty pounds and carry up to ten pounds;[3] could sit without interruption for no more than thirty minutes, stand without interruption for no more than fifteen minutes, and walk without interruption for no more than ten minutes; and could sit,

---

[2] Cervicalgia is the clinical name for neck pain attended by tightness or spasms of the neck muscles. www.helpline.com/help/cervicalgia.

[3] "Occasionally" is defined in the Medical Source Statement as "from very little to one-third of the time".

stand, and walk in the aggregate for no more than three hours in an eight hour day. Dr. Jacobs explained that Plaintiff's lower back pain radiating into his legs limited his "ability to remain in the same position for any prolonged period of time". Dr. Jacobs found that, though compliant with medications, physical therapy, and referrals, Plaintiff exhibited "an unfortunate lack of improvement in his symptoms." (R. at 241-42).

Dr. Jacobs also stated that Plaintiff's ability to reach, handle, finger, feel, and push or pull with his upper and lower extremities was limited by his inability to stay in one position for more than fifteen minutes. Dr. Jacobs concluded that the limitations he identified had affected claimant for more than two years. In support of his conclusions, Dr. Jacobs provided an MRI dated February 27, 2013 that documented: a left paramedial disc herniation at L5-S1 superimposed to a very narrow disc space; facet arthrosis at the L4-L5 disc space with complex tear of the annulus fibrosus and severe compromise of the neural foramina bilaterally; and minimal tear of the annulus fibrosus at L3-L4 with very minimal compromise of the inferior aspect of the neural foramina. (R. at 243-250).

### 2. Northeastern Rehabilitation Associates.

Plaintiff was seen twice at Northeastern Rehabilitation Associates by Dr. Amet Dholakia on referral from Dr. Irvin Jacobs. These examinations took place on May 16, 2013 and July 1, 2013. Dr. Dholakia assessed Plaintiff as suffering from multi-level "lumbar degenerative disc disease, degenerative changes of the

lumbar spine, disc herniation at L4-L5 deviated towards the left, and bilateral lower extremity pain, most likely neuropathic however possibly radicular." Dr. Dholakia prescribed a home exercise program for the Plaintiff and recommended that he discontinue taking "a significant amount of Lortab" and instead take fifteen milligrams of morphine twice daily augmented by Tramadol. Dr. Dholakia noted that if the change in medication did not alleviate Plaintiff's pain he would recommend a lumbar epidural steroid injection.[4] Dr. Dholakia reported that the home exercise program he recommended to Plaintiff did not afford him significant pain relief. (R. 200-203).

### 3. Chiropractic and Rehab Associates.

Plaintiff saw Dr. Mark E. Morris, a chiropractor, on five occasions between October 1, 2014 and October 20, 2014. Plaintiff reported to Dr. Morris that his chief complaint was lumbar discomfort with pain radiating down both legs into his feet. Plaintiff also stated that he was experiencing neck pain characterized by throbbing and tightness. Plaintiff stated that both his low back and neck symptoms were exacerbated by bending, sitting, lifting, walking, carrying, climbing, and driving. Dr. Morris' examinations revealed points of tenderness at C5-C6, T7-T8, and L4-L5. On all five occasions when Dr. Morris examined Plaintiff he had

_____

[4] Plaintiff testified that he was amenable to receiving a lumbar epidural steroid injection but, because his insurance company would not authorize payment, he never had one. (R. at 47).

positive straight leg raise bilaterally. Dr. Morris performed specific spinal adjustments "to restore normal movement to fixated spinal segments as well as improve muscle control and remove any nerve interference" on each of the five occasions documented in the record. On October 20, 2014, Plaintiff reported that his cervical and lumbar symptoms increased with movement and prolonged sitting and decreased with rest, medication, and chiropractic care. Throughout Dr. Morris' treatment of Plaintiff his case status was described as "acute". (R. 207-217).

## IV.    ALJ Decision.

The ALJ's Notice of Decision dated April 3, 2017 (R. at 15-25) was unfavorable to the claimant it included the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since January 1, 2013, the alleged onset date.[5]

3. The claimant has the following severe impairment: degenerative disc disease of the lumbar spine.

---

[5] In actuality, the transcript of Plaintiff's hearing indicates that the ALJ was told by Plaintiff's attorney that Plaintiff wished to amend his onset date to June 25, 2014.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Sub. Part P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b)and 416.967(b). He can occasionally use his upper and lower extremities for pushing and/or pulling such as operating levers, hand controls, pedals, and foot controls. The claimant can occasionally balance, kneel, stoop, crouch, use ramps, and climb stairs. He should avoid crawling and climbing on ladders, ropes, and scaffolding. The claimant should avoid concentrated exposure to slippery conditions, vibrations and workplace hazards such as unprotected heights and dangerous moving machinery.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on June 25, 1965 and was forty-seven years old, which is defined as a younger individual aged 18 to 49, on the alleged disability onset date. The claimant subsequently changed age

category to closely approaching advanced age at his amended alleged onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2013, through the date of this decision.

## V. Disability Determination Process.

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[6] It is necessary for the Commissioner to ascertain:

---

[6] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual is disabled

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work

*(footnote continued on next page)*

1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 CFR §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he is unable to engage in his past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

---

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

As set out above, the instant decision was decided at the fifth step of the process when the ALJ found there are jobs that exist in the national economy that Plaintiff is able to perform.

(Doc. 8-2 at 24-25).

## VI.    Standard of Review.

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla".  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The United States Court of Appeals for the Third Circuit  further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence–-particularly certain types of evidence (e.g., that offered by treating physicians)–-or if it really constitutes not evidence but mere conclusion.  *See Cotter*, 642 F.2d at 706 ("Substantial evidence" can only be considered as

supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

710 F.2d at 114.

This guidance makes clear that it is necessary for the Secretary to analyze all evidence. If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, our Court of Appeals clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can

determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *See*, *e.g.*, *Albury v. Commissioner of Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review."). Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## VII.  Discussion

### A. General Considerations

At the outset of this Court's review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, I note that the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits.  *See Dobrowolsky*, 606 F.2d at 406.  Social Security proceedings are not strictly adversarial; rather the Social Security Administration provides an applicant with assistance to prove his claim.  *Id.*  "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act."  *Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974).  As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence.  *Dobrowolsky*, 606 F.2d at 406.  Further, the court in *Dobrowolsky* noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed."  *Id.*

## B. Plaintiff's Allegations of Error.

Plaintiff asserts that the ALJ made two errors that require remand of this case for further consideration. The Court will consider these alleged errors in the order presented by Plaintiff.

### 1. Whether the ALJ's determination that Plaintiff can perform light work is based on substantial evidence?

Having thoroughly reviewed the record and the ALJ's decision, the Court must conclude that the ALJ's determination that Plaintiff is capable of performing light work with certain enumerated modifications is without adequate evidentiary support. The medical record in this case is not as comprehensive as one ordinarily sees in the context of a DIB claim. Nevertheless, Dr. Jacobs, a treating physician who examined Plaintiff on multiple occasions during the relevant time period, opined in a Medical Source Statement that Plaintiff's physical infirmities were sufficiently severe to preclude light work. Section 404.1567 of the Code of Federal Regulations sets forth the Agency's definition of light work. That definition includes the proviso that light work requires "frequent lifting or carrying of objects weighting up to ten pounds." Additionally, light work "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls." Dr. Jacobs' Medical Source Statement clearly places the above-referenced aspects of light work beyond his estimation of Plaintiff's physical capacities.

The Government contends (Doc. 12 at 7-9) that it is within an ALJ's discretion to decide whether the claimant is disabled and that determination need not be based upon any particular medical opinion. This is both true and non-dispositive here because the ALJ's discretion to do so is not unbridled. As Plaintiff asserts (Doc. 11 at 13-14), "an ALJ may not make inferences from medical reports based on his own credibility judgments or speculation; rather, the ALJ must cite contradictory evidence." *Plummer v. Apfel*, 186 F.3d 422,429(3d Cir. 1999); cited with approval in *Morales v. Apfel*, 225 F.3d 310,317 (3d Cir. 2000). Thus, while the ultimate disability determination is vested in the ALJ, it must be based upon credible medical evidence of record. Otherwise, the fundamental "substantiality" requirement articulated in *Richardson v. Perales*, supra, is emasculated.

The ALJ assigned limited weight to the treating physician's evaluation of Plaintiff's capacity for work. As indicated earlier, that evaluation, if credited, would preclude Plaintiff from performing work at the light exertion level as deemed possible by the ALJ. In reaching his conclusion that the Plaintiff could perform "light work" with certain modifications, the ALJ referenced no contradictory medical evidence as required by *Plummer and Morales*, supra. Indeed, the record contains no such contradictory medical evidence. The ALJ apparently based his decision on his perception that the limitations imposed by Dr. Jacobs "are not supported by examination findings or other evidence of record when considered in its entirety." (R. at 23). The ALJ does allude to "self-reported

activities of daily living (Exhibit B-2E and Testimony) and rather benign examination findings." *(Id).*

Having reviewed the record carefully, including Plaintiff's hearing testimony and Exhibit B-2E (Plaintiff's Adult Function Report), the Court respectfully disagrees with the ALJ's assertion that the claimant's self-reporting contradicts Dr. Jacobs' findings. The Plaintiff complained consistently over a period of years of low back pain radiating into his legs along with neck pain and limited range of movement. Moreover, Dr. Jacobs' opinion is buttressed by an MRI that posits severely narrowed disc spaces in Plaintiff's lumbar spine and, significantly, a left paramedial disc herniation at L5-S1 together with facet arthrosis at L1-L2, L2-L3, and L4-L5.

These objective diagnostic test results and Dr. Jacobs' numerous clinical examinations demonstrating positive straight leg raise tests are hardly "benign" findings as described by the ALJ. Moreover, they would seem to validate Plaintiff's pain, restrictive range of motion, stiffness, and inability to remain for any prolonged period of time in any position. Indeed, when complaints of pain are supported by medical evidence, as is the case here, they must be given great weight and the ALJ may not discount them without contrary medical evidence. It would seem that the ALJ has simply ignored this clear precedent. *Ferguson v. Schweiker*, 765 F. 2d 31, 37 (3d Cir. 1985).

Here, balanced against the opinion of a treating physician who attended the Plaintiff over a period of years and whose conclusions are supported by objective diagnostic test evidence, I have only the ALJ's lay interpretation of what the medical records reveal.[7] This sort of lay speculation is insufficient and may not be characterized as "substantial evidence" - - that degree of evidence that a reasonable mind might accept as adequate to support a conclusion - - as required by *Richardson v. Perales*, supra. Consequently, the Plaintiff's assignment of error on this point is deemed valid.

**2. Whether the ALJ improperly rejected a well-supported finding of a prior ALJ without evidence of medical improvement?**

As acknowledged by the ALJ, a previous decision on Plaintiff's claim by another ALJ dated May 29, 2014 had found as a fact that Plaintiff was limited to sedentary work as of January 1, 2013. (R. at 34). After discussion with Plaintiff's attorney on the record at the hearing of October 4, 2016, the ALJ also acknowledged that Plaintiff was amending his onset of disability date to June 25, 2014, his fiftieth birthday. (R. at 35). Finally, the ALJ correctly stated that, if Plaintiff established that his RFC was "sedentary" as of the alleged amended onset date, he would have a "favorable GRID outcome at age fifty". (R. at 54).

---

[7] The Government cites several cases (Doc. 12 at 8-9) for the proposition that an ALJ's RFC determination need not be based upon any particular medical opinion. However, these cases are distinguishable because in each the ALJ was able to rely upon contravening medical evidence to deny benefits. Such is simply not the case here.

The Government cites several cases for the proposition that findings by a prior ALJ "are not binding in a later proceeding that involves a determination as to whether a claimant is disabled in a subsequent period." (Doc. 12 at 11-12). These citations are accurate but miss an essential point, whether the Plaintiff's physical condition improved between the first ALJ's decision and that this Court now addresses. The Government also relies upon *Butler v. Colvin*, 2016 WL 2756268, (M.D.Pa. May 12, 2016), and accurately describes that case as one in which the Court: (1) recognized that an earlier ALJ finding was not binding; and (2) remanded the case for the ALJ to provide an explanation for finding a different RFC in the subsequent case. In *Butler*, as in this case, the second ALJ found a less restrictive RFC than the prior ALJ. However, the Government omits mention of the *Butler* Court's ultimate conclusion:

> Here common sense and logic dictate that the earlier finding of Plaintiff being limited to sedentary work as of June 18, 2012, is an important and probative fact relevant to her RFC as of June 19, 2012. Particularly in the absence of a finding that Plaintiff's condition had improved, some explanation is warranted as to why a different RFC is supported by substantial evidence. Such an explanation should be provided on remand.

(*Butler* at 17).

Having reviewed the record carefully, this Court has determined that there is no substantial evidence of record to indicate that Plaintiff's physical condition improved from the day of the prior ALJ's finding that he was limited to sedentary work to the date ALJ Tranguch issued the Notice of Decision I now reject. Certainly, neither the ALJ nor the Government provides any citation to the record indicating an improvement in Plaintiff's condition. Consequently, Plaintiff's allegation of error on this point is also to be credited.

## VIII. Conclusion.

This case will be remanded to the Agency for further consideration consistent with the points raised in the foregoing discussion. The Agency is directed to conduct additional proceedings and/or expand the record to provide medical evidence that Plaintiff's physical condition improved between January 1, 2013 and Plaintiff's amended alleged onset date, June 25, 2014, to the extent necessary to justify the ALJ's RFC determination. In the absence of such evidence, Plaintiff's claim should be approved.

An Order consistent with this determination will be filed contemporaneously.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge